```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
ANTHONY J. BRACCIA and                  :
MARIA T. BRACCIA,
                                        :
                Plaintiffs,
                                        :
        -against-                           REPORT AND RECOMMENDATION
                                        :
                                            08 Civ. 08927 (LTS)(KNF)
D'BLASS CORP.,                          :

                Defendant.              :
------------------------------------------------------X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE

## BACKGROUND

Anthony J. Braccia ("AB") and Maria T. Braccia ("MB") commenced this action for damages against D'Blass Corporation. The defendant owned and operated a bar, known as D'Blass Restaurant, located in Bronx County, New York. On December 18, 2006, at some time prior to 5:47 a.m., the defendant served alcohol to Jose J. Martinez ("Martinez") at D'Blass Restaurant, even though Martinez was already intoxicated. At approximately 5:47 a.m., at the eastbound side of the 15W New Jersey Turnpike Interchange, Martinez's vehicle, traveling westbound, crossed over into oncoming eastbound traffic, striking AB's minivan head-on, causing death to one of Martinez's passengers and permanent injuries to AB. MB was not involved in the collision. In their complaint, the plaintiffs asserted the following claims: (1) New York Dram Shop Act, codified in New York General Obligations Law ("NYGOL") § 11-

1

101, by AB; (2) negligence, by AB; and (3) loss of consortium, by MB. In the ad damnum[1] clause of the complaint, the plaintiffs sought: (i) "actual damages in a sum which is just, fair and compensable"; (ii) "punitive damages in a sum which is just, fair and compensable"; and (iii) "the costs and disbursements of this action." The defendant answered, denying the allegations. Thereafter, the defendant's attorney made a motion to be relieved as counsel for the defendant, which was granted and the defendant was directed to file and serve a notice of appearance by new counsel, by December 10, 2009. On April 22, 2010, the plaintiffs made a motion to strike the defendant's answer and for a judgment by default, pursuant to Rule 55 of the Federal Rules of Civil Procedure. Your Honor granted the motion to strike and for judgment by default, deeming the factual allegations in the complaint admitted, and referred the case to the undersigned for an inquest on damages.

    On April 27, 2010, the Court directed: (a) the plaintiffs to file their proposed findings of fact and conclusions of law, as well as an inquest memorandum, accompanied by supporting affidavits and exhibits, setting forth proof of damages, costs of this action, including any applicable interest and attorney's fees; and (b) the defendant to file any opposing memorandum, affidavits and exhibits, as well as any alternative findings of fact and conclusions of law. Subsequently, the plaintiffs hand-delivered their "inquest submissions" to the Court, without filing them, and requested that the "electronic filing of these papers be waived." By an order, dated March 18, 2011, the Court noted that: (a) no affidavit establishing service of the plaintiffs' inquest submissions on the defendant was filed; (b) no proposed findings of fact and conclusions of law were submitted; and (c) no supporting affidavits were submitted, and directed the

---

[1] "A clause in a prayer for relief stating the amount of damages claimed." BLACK'S LAW DICTIONARY 43 (9th ed. 2009).

plaintiffs to remedy the noted deficiencies. Moreover, the Court's March 18, 2011 order also noted that the plaintiffs' document, entitled "Proposed Findings of Fact," was deficient because it consisted of conclusory legal statements and requested that "the plaintiff . . . be awarded judgment against the defendant" for: (a) past pain and suffering; (b) future pain and suffering; (c) past loss of earnings; (d) future loss of earnings; (e) future medical expenses; and (f) attorney's fees and the costs of this action, without indicating the amounts requested or submitting any proof in their support. By a letter, dated March 28, 2011, the plaintiff's attorney stated:

> I left those numbers blank as I assumed that the Court would fill them in as part of the decision in the inquest. I also assumed that the plaintiff's sworn testimony from the underlying case would be sufficient as well. I would ask a few minutes of the Court's time . . . for discussion and guidance as to exactly what the Court wants submitted in regard to proposed findings of fact and supporting affidavits.

On March 30, 2011, the Court denied the request "for discussion and guidance," noting that its April 27, 2010 order was clear and unambiguous in its description of what the parties are to submit to the Court with respect to proving or contradicting the damages claimed by the plaintiffs.

Thereafter, the plaintiffs filed their inquest materials, without correcting the deficiencies noted in the Court's March 18, 2011 order. Other than inserting the amount of damages requested, the plaintiffs failed to correct other deficiencies and simply re-filed the original inquest submissions. The plaintiffs failed to submit any affidavits and proposed conclusions of law. In their "Inquest Memorandum," the plaintiffs recite factual circumstances leading to AB's injuries. They state, <u>inter alia</u>:

> Plaintiff's injuries were quite extensive, even though they were basically limited to his leg. He was hospitalized for 8 days, and he underwent two surgeries. . . . Plaintiff was a union carpenter. He was out of work for over a year. . . . Plaintiff's total

3

>recovery from the tortfeasor and from underinsured motorist coverage totaled $27,599 before fees, expenses and liens. All of plaintiff's medical bills were paid by no fault coverage, but he received only $100 per week in reimbursement of lost wages. . . . The plaintiff has put figures in as suggestions for the findings of damages, but leaves the actual award to the Court's discretion and decision.

The plaintiffs submitted: (1) exhibits A, B, C and H, consisting of transcripts from the depositions of Martinez, Caonex Bernabel ("Bernabel"), Reynaldo Nieves ("Nieves") and AB, respectively, in an earlier action, captioned <u>Anthony J. Braccia, et.al., v. Jose J. Martinez</u>, Civil Action No. 07-657 (FSH), in the United States District Court for the District of New Jersey ("New Jersey action"); (2) exhibit D, consisting of various New Jersey State Police investigation reports in connection with the December 18, 2006 collision and a letter by Auto One Insurance Claims Service Center, dated May 7, 2007; (3) exhibit E, New Jersey State Police Voluntary Statement Forms by Miguel Mosodeen ("Mosodeen") and Elizabeth Miranda ("Miranda"); (4) exhibit F, various medical reports in connection with AB's treatment starting on December 18, 2006, and various billing statements concerning AB's treatment; and (5) exhibit G, consisting of a New York District Council of Carpenters Benefit Funds letter, dated January 11, 2007, various pages indicating AB's earnings, a one-page document by the Pennsylvania Department of Public Welfare concerning MB, dated January 24, 2007, and an order of payment by the State of New Jersey Victims of Crime Compensation Board to AB, dated January 19, 2007. The plaintiffs also submitted a document entitled "Proposed Findings of Fact," stating:

>On December 18, 2006, Jose Martinez consumed excessive quantities of alcohol at defendant's premises, prior to getting into his car and driving back to New Jersey where he crashed his car head on into the [sic] operated by the plaintiff in the plaintiff's eastbound lane of traffic as plaintiff was approaching the entrance tolls of the New Jersey Turnpike in Kearny, New Jersey...[sic] Defendant negligently served Jose Martinez and his party with excessive quantities of alcohol despite Jose Martinez's obvious impairment leading to significant intoxication. Defendant's negligence in serving Jose Martinez excessive quantities of alcohol was a proximate cause of the auto accident which occurred that morning and was a proximate cause

of the injuries sustained by plaintiff.  Plaintiff shall be awarded judgment against the defendant in the following amounts:

```
Past pain and suffering . . . . . . . . . . . $   500,000.00
Future pain and suffering . . . . . . . . . $1,500,000.00
Past loss of earnings . . . . . . .. . . . . .$     50,000.00
Future loss of earnings . . . . . . . . . . . $   500,000.00
Total Award . . . . . . . . . . . . . . . . . . . $2,550,000.00
```

## DAMAGES

*Legal Standard*

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.  The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).  Establishing the appropriate amount of damages involves two steps: (1) "determining the proper rule for calculating damages on . . . a claim"; and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule."  Id.  Rule 55(b)(2) of the Federal Rules of Civil Procedure "leaves the decision of whether a hearing is necessary[, for determining damages,] to the discretion of the district court" and "as long as . . . there [is] a basis for the damages specified in a default judgment," the court is not required to hold a hearing.  Fustok v. Conticommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).  When assessing damages, a court cannot rely on the plaintiff's statement of the damages; rather damages must be established "with reasonable certainty."  Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997).  This means that, in an inquest on damages following a default, damages must be based on admissible evidence.  See e.g., Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 224 (S.D.N.Y. 2003).  The Federal Rules

of Evidence require that evidence must be authenticated and that requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). Examples of authentication evidence include: (a) testimony of a witness with knowledge that a matter is what it is claimed to be; (b) comparison by the trier of fact or expert witness with specimens which have been authenticated; (c) public records or reports; (d) evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result; and (d) any method of authentication provided by Act of Congress or by other rules prescribed by the Supreme Court pursuant to statutory authority. See Fed. R. Evid. 901(b). Certain evidence is self-authenticating, such as: (i) domestic public documents under seal; (ii) domestic public documents not under seal; (iii) certified copies of public records; and (iv) certified domestic records of regularly conducted activity. See Fed. R. Evid. 902.

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

> The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

10 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2663 (3d ed. 1998). "[N]otice that comes at the inquest stage" is not sufficient in itself to satisfy the notice requirement of Rule 54(c) and to "permit a plaintiff in a default action to recover for damages not claimed in the complaint." Silge v. Merz, 510 F.3d 157, 161 (2d Cir. 2007). "Although Rule 54(c) limits the damages recoverable by a plaintiff following a default

judgment to the type and quantity of damages demanded in the complaint, it does not require plaintiff to have demanded a sum certain in order to recover on default." Ames v. Stat Fire Suppression, Inc., 227 F.R.D. 361, 362 (E.D.N.Y. 2005).  Rule 54(c) does not preclude an award of damages where those "damages were explicitly requested in the complaint and sufficiently established by the affidavits submitted by plaintiffs." Id.  Where the complaint does not include a demand for prejudgment interest, "the conventional additional demand for 'such other and further relief as the Court deems just and proper' does not constitute a demand for prejudgment interest." Silge, 510 F.3d at 160.

State law governs substantive damages issues in a case over which a federal court exercises diversity jurisdiction. See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 437, 116 S. Ct. 2211, 2224 (1996).  Actual damages, also termed compensatory damages, see BLACK'S LAW DICTIONARY 445 (9th ed. 2009), are allowed to be recovered in an action pursuant to the New York Dram Shop Act, see NYGOL §11-101, and in a negligence action. See Cleghorn v. New York Cent. and Hudson River R.R. Co., 56 N.Y. 44, 47 (1874).  "Generally, under New York law a plaintiff may recover his loss of earnings, medical expenses, and mental and physical pain and suffering." Ulrich v. Veterans Admin. Hosp., 853 F.2d 1078, 1082 (2d Cir. 1988).  An award for pain and suffering "does not lend itself to neat mathematical calculation." Caprara v. Chrysler Corp., 52 N.Y.2d 114, 127, 436 N.Y.S.2d 251, 257 (1981). Under New York law, future pain and suffering damages are calculated, in part, through reference to actuarial tables to determine the projected life span of the plaintiff, and include "all [] other tangible and intangible losses that were sure to follow." Bermeo v. Atakent, 241 A.D.2d 235, 239, 671 N.Y.S.2d 727, 730 (App. Div. 1st Dep't 1998).  New York Pattern Jury Instructions Civil ("NYPJIC") provide that a plaintiff "is entitled to recover a sum of money

which will justly and fairly compensate (him, her) for any injury and conscious pain and suffering to date caused by defendant." NYPJIC § 2:280 (2011). They also provide that:

> With respect to any of the plaintiff's injuries or disabilities, the plaintiff is entitled to recover for future pain, suffering and disability and the loss of (his, her) ability to enjoy life. In this regard you should take into consideration the period of time that the injuries or disabilities are expected to continue. If you find that the injuries or disabilities are permanent, you should take into consideration the period of time that the plaintiff can be expected to live. In accordance with statistical life expectancy tables, AB has a life expectancy of [*insert number*] years. . . . The life expectancy figure I have given you is not binding upon you, but may be considered by you together with your own experience and the evidence you have heard concerning the condition of AB's health, (his, her) habits, employment and activities in deciding what AB's present life expectancy is.

NYPJIC §2:281.

Under New York law, "[t]he basic rule is that loss of earnings must be established with reasonable certainty, focusing, in part, on the plaintiff's earning capacity both before and after the accident." Clanton v. Agoglitta, 206 A.D. 2d 497, 499, 615 N.Y.S.2d 68, 69 (App. Div. 2d Dep't 1994) (citations omitted). "The amount of [past] lost wages is the difference between [the plaintiff's] regular salary less the amount he received in disability payments." Dockery v. United States, 663 F. Supp. 2d 111, 122 (N.D.N.Y. 2009). Future loss of earnings "[d]amages are computed by measuring the monetary value of the diminution in the plaintiff's annual earning capacity, multiplying that amount by the number of years the plaintiff could have worked—his work-life expectancy—and then discounting that amount to present value." Rummo v. Celotex Corp., 726 F. Supp. 426, 427 (E.D.N.Y. 1989). NYPJIC provides the following, which may guide the determination of loss of earnings damages at an inquest:

> Plaintiff AB is entitled to be reimbursed for any earnings lost as a result of (his, her) injuries caused by Defendant CD's negligence from the time of the accident to today. Moreover, if you find that as a result of those injuries AB has suffered a reduction in (his, her) capacity to earn money in the future, than AB is also entitled to be reimbursed for loss of future earnings. Any award you make for earnings lost to date

> must not be the result of speculation; any award must be calculated from the number of days that you find AB was disabled from working by the injuries and the amount that you find AB would have earned had (he, she) not been disabled. Any award you make for reduction of AB's earning capacity in the future should be determined on the basis of AB's earnings before the accident, the condition of AB's health, (his, her) prospects for advancement and the probabilities with respect to future earnings before the accident, the extent to which you find that those prospects or probabilities have been reduced by the injuries, the length of time that you find AB would reasonably be expected to work had (he, she) not been injured, the nature and hazards of AB's employment and any other circumstances which would have an effect on AB's earning capacity. AB is now [ *insert number*] years of age and has a (life expectancy according to the mortality tables, work life expectancy according to the work life expectancy tables in evidence) of [*insert number*] more years. Such tables are, of course, nothing more than statistical averages. . . . The figures I have given you are not binding upon you, but may be considered by you together with your own experience and the evidence you have heard in determining what AB's (life, work life) expectancy is. If you find that AB is entitled to an award for reduction in earning capacity in the future, you will fix the dollar amount of such reduction over the entire period that you find AB will suffer reduction and include that amount in your verdict. In your verdict you will state separately the amount awarded for loss of earnings to date, if any, and, if you make an award for loss of future earnings, you will state in your verdict the amount awarded and the period of years over which such award is intended to provide compensation. Do not state an amount per year but only a total amount for the entire period.

NYPJIC § 2:290 (2011). Damages received on account of personal injuries and lost earnings resulting from those injuries are not taxable. See Lanzano v. City of New York, 71 N.Y.2d 208, 211-12, 524 N.Y.S.2d 420, 421-22 (1988).

***Application of Legal Standard***

*Whether Rule 54(c) Requirements Are Satisfied*

In the ad damnum clause of the complaint, the plaintiffs demanded: (a) actual damages; (b) punitive damages; and (c) costs and disbursements of this action, without stating the amount of damages to be awarded. However, in the plaintiffs' inquest submissions, AB[2] seeks, in

---

[2] In the plaintiffs' "Inquest Memorandum" and "Proposed Findings of Fact," damages are sought only for one plaintiff, without identifying that plaintiff. Based on the type of damages sought and the inquest submissions, the Court finds that the plaintiff seeking damages is AB.

connection with his New York Dram Shop Act and negligence claims, actual or compensatory damages as follows: (1) past and future pain and suffering; and (2) past and future lost earnings. Although the complaint did not specify the amount of damages requested, Rule 54(c) notice is satisfied because actual damages were explicitly requested in the complaint and AB seeks actual damages in connection with the defendant's default. Provided AB establishes damages by sufficient, competent evidence, his failure to indicate the amount of damages sought in the ad damnum clause of his complaint does not bar an award of damages. See Ames, 227 F.R.D. at 362.

### Exhibits A, B, C and H: Transcripts from Depositions Taken in an Earlier Action

The plaintiffs' exhibits A, B, C, and H consist of transcripts from the depositions of Martinez, Bernabel, Nieves and AB, respectively, conducted in an earlier, New Jersey action.

> A deposition lawfully taken and . . . filed in any federal- or state -court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence.

Fed. R. Civ. P. 32(8). The following is not excluded by the hearsay rule:

> Testimony given . . . in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fed. R. Evid. 804(b)(1).

"[T]he law is very clear to the effect that in order for a deposition to be admissible in another action, not only must the parties be the same, but the issues must be substantially the same." Alamo v. Pueblo Int'l Inc., 58 F.R.D. 193, 194 (D.P.R. 1972); see 8A CHARLES ALAN WRIGHT, ARTHUR R. MILLER AND RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2150 (3d

ed. 2010). "The party seeking to admit a deposition at trial must prove that the requirements of Rule 32(a) have been met." Allgeier v. United States, 909 F.2d 869, 876 (6th Cir. 1990).

The defendant in this action is not the same as the defendant in the New Jersey action. The issues in this action, in connection with the Dram Shop Act and negligence claims against D'Blass Corporation for serving alcohol to Martinez, are not similar to the issues in the New Jersey action, in connection with the negligence claim against Martinez for driving and colliding with AB while intoxicated. In their Inquest Memorandum, the plaintiffs state:

> Three suits for four plaintiffs were brought in New Jersey, which resulted in the coverage being split 4 ways. Plaintiff and his two passengers split $45,000 of underinsured motorist coverage available to them from Geico, which covered plaintiff's car. Plaintiff's total recovery from the tortfeasor and from underinsured motorist coverage totaled $27,500 before fees, expenses and liens. All of plaintiff's medical bills were paid by no fault coverage, but he recovered only $100 per week in reimbursement of lost wages.

Without more, the plaintiffs failed to establish that the depositions from the New Jersey action against Martinez, exhibits A, B, C, and H, are admissible evidence in this action against D'Blass Corporation, and they cannot be considered in this inquest on damages.

*Exhibit D*

Exhibit D consists of various New Jersey State Police investigation reports in connection with the December 18, 2006 collision and a letter by Auto One Insurance Claims Service Center, dated May 7, 2007. Although New Jersey State Police investigation reports may be admissible as public records in a civil action, pursuant to Federal Rule of Evidence 803(8), they have not been authenticated by the plaintiffs, as required by the Federal Rules of Evidence. Moreover, part of exhibit D, the Auto Insurance Claims Service Center document, dated May 7, 2007, is not a public record and was not authenticated by the plaintiffs; in addition, it is not relevant to this inquest on damages. See Fed. R. Evid. 402. Since the plaintiffs failed to submit affidavits or

certifications, authenticating documents contained in exhibit D, exhibit D may not be considered in this inquest on damages.

*Exhibit E*

Exhibit E consists of New Jersey State Police Voluntary Statement Forms by Mosodeen and Miranda, made on December 18, 2006. Statements of third parties who have no duty to report what they observe, even if made as part of a police report, are not admissible, unless a party offering them in evidence establishes they satisfy one of the hearsay exceptions in the Federal Rules of Evidence. See Fed. R. Evid. 802, 803, 804; Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d. Cir. 1991). Since the plaintiffs failed to sustain their burden of establishing that exhibit E is admissible evidence, it cannot be considered in this inquest on damages. Moreover, exhibit E is irrelevant to the plaintiffs' damages because it does not refer to AB or describe any factual circumstances concerning his physical or mental condition at the time immediately after the collision, when the statements were made and to which they were limited. See Fed. R. Evid. 402.

*Exhibit F*

Exhibit F consists of various medical reports in connection with AB's treatment, starting on December 18, 2006, and various billing statements concerning AB's treatment. The part of exhibit F consisting of various billing statements concerning AB's treatment, is irrelevant to the inquest on damages because the plaintiffs do not seek an award of medical expenses. See Fed. R. Evid. 402. Exhibit F's various medical reports include: FP-North Jersey Orthopedic Institute ("NJOI") operative report and hospital discharge report by Dr. Michael Sirkin ("Dr. Sirkin"), dated December 18, 2006; NJOI operative report by Frank Liporace ("Dr. Liporace"), dated December 21, 2006; transcriptions by Dr. Sirkin, dated January 2, February 21, March 16 and

May 8, 2007; January 2, 2007 prescription for physical therapy by Dr. Sirkin; transcriptions by Dr. Sirkin, dated February 21, 2007; an unsigned prescription by "Terri L Cortes PA-C," dated January 30, 2007; copies of X-rays; radiology reports by Dr. Marcia Blacksin, Dr. Leo J. Wolansky and Dr. Helene Goldfarb; emergency physician's records; medical incident reports; prescriptions; consultation examination and recommendation notes; physician progress notes; brief operative notes; multidisciplinary progress notes and other documents.

"Medical records . . . can be admissible under Federal Rule of Evidence 803(6), provided they are prepared in the regular course of business, near the time of occurrence, by a person with knowledge and are properly authenticated." Hodges v. Keane, 886 F. Supp. 352, 356 (S.D.N.Y. 1995). "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are admissible. Fed. R. Evid. 803(4). The plaintiffs failed to authenticate the variety of documents from, different sources, that comprise exhibit F. Although "circumstantial evidence may serve to demonstrate a document's authenticity," John Paul Mitchell Systems v. Quality King Distributors, Inc., 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000), no such circumstantial evidence was offered here, given that no affidavits were submitted and no other evidence was offered to support the conclusion that the documents in exhibit F are authentic. Even if properly authenticated, medical reports in exhibit F would not carry substantial weight in determining AB's damages for pain and suffering, because they are limited almost exclusively to the time period between December 18 and 24, 2006, during which AB underwent treatment for his left femur fracture. Moreover, diagnostic reports, including radiology reports, describe AB's physical and functional condition, mostly without mentioning his pain. A large amount of

unauthenticated medical records, without any affidavits, other evidence or explanation of their relevance and meaning to AB's request for pain and suffering compensation, does not serve as sufficient evidence establishing damages.

*Exhibit G*

Exhibit G consists of: (i) a New York District Council of Carpenters Benefit Funds letter, dated January 11, 2007; (ii) various pages purporting to indicate AB's earnings; (iii) a one-page document by the Pennsylvania Department of Public Welfare, concerning MB, dated January 24, 2007; and (iv) an order of payment by the State of New Jersey Victims of Crime Compensation Board to AB, dated January 19, 2007.  The plaintiffs failed to authenticate exhibit G. Additionally, it is not clear what a one-page document by the Pennsylvania Department of Public Welfare concerning MB represents or what its relevance might be to AB's damages claim. Therefore, Exhibit G cannot be considered in this inquest on damages.

## RECOMMENDATION

For the foregoing reasons, the plaintiffs have not established, by sufficient admissible evidence, that an award of damages is warranted, and I recommend that no award of damages be made to the plaintiffs.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, 500 Pearl Street, Room 735, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 540, New York, New York, 10007.  Any requests for

an extension of time for filing objections must be directed to Judge Crotty. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
June 13, 2011

Respectfully submitted:

*/s/ Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE